**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

APR 2 7 2015

JEFFREY P. COLWELL
CLERK

Civil Action No. _____

(To be supplied by the court)

_Alton Davis_ _____, Plaintiff,

v.

_____,

_J. Oliver_ _____,

_R. Turner_ _____,

_Federal Bureau of Prison's_ ____,

_____,

_____,

_____,

_____, Defendant(s).

(List each named defendant on a separate line.)

---

**PRISONER COMPLAINT**

---

(Rev. 1/30/07)

**A. PARTIES**

1. _Alton Davis 59854-054 U.S. Penitentiary Max_
   (Plaintiff's name, prisoner identification number, and complete mailing address)
   _P.O. Box 8500 Florence, CO, 81226_

2. _J. Oliver Warden U.S. Penitentiary Max_
   (Name, title, and address of first defendant)
   _P.O. Box 8500 Florence C.O. 81226_

   At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? __ Yes __ No  (CHECK ONE).  Briefly explain your answer:

   _J. Oliver is being sued in his official capacity as a federal institutional warden_

3. _R. Turner SIS Technician U.S. Penitentiary_
   (Name, title, and address of second defendant)
   _Max. P.O. Box 8500, Florence CO 81226_

   At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? __ Yes __ No  (CHECK ONE).  Briefly explain your answer:

   _R. Turner is being sued in her official capacity as a federal institutional SIS Technician_

4. _Federal Bureau of Prisons -BOP_
   (Name, title, and address of third defendant)
   _320 first Street N.W. Washington D.C. 20534_

   At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? __ Yes __ No  (CHECK ONE).  Briefly explain your answer:

   _Federal Bureau of Prisons is being sued in its official capacity as a federal agency_

(If you are suing more than three defendants, use extra paper to provide the information requested above for each additional defendant.  The information about additional defendants should be labeled "A. PARTIES.")

(Rev. 1/30/07)                    2

**B. JURISDICTION**

1.   I assert jurisdiction over my civil rights claim(s) pursuant to:  (check one if applicable)

   ___   28 U.S.C. § 1343 and 42 U.S.C. § 1983 (state prisoners)

   ✓   28 U.S.C. § 1331 ~~and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (federal prisoners)~~

2.   I assert jurisdiction pursuant to the following additional or alternative statutes (if any):

   U.S. Constitution and the Religious
   Freedom Restoration Act of 1993

**C. NATURE OF THE CASE**

**BRIEFLY** state the background of your case.  If more space is needed to describe the nature of the case, use extra paper to complete this section.  The additional allegations regarding the nature of the case should be labeled "C. NATURE OF THE CASE."

On or about March of 2007, plaintiff Alton Davis was arrested and charged with Hobbs Act robberies. In August of that same year the government returned a eight count superseding indictment. On May 3, 2010 plaintiff was convicted of all counts charged in the indictment by use of false and fabricated evidence.

On June of 2010 plaintiff was sequestered from general population in the Metropolitan Correctional Center New York "MCC," and subjected to total isolation and twenty four hour's per-day confinement. After sentencing in August of 2010, plaintiff submitted a letter to the district judge who presided over his criminal case, informing the judge of the unique position he has been subjected to, and if the ATF so-called investigation is not successful after ninety days he should order plaintiffs classification to go back to normal in order for plaintiff's replacement back in general population.

Shortly there after in or about September 10, 2010, plaintiff

## C. Nature Of The Case.

was implemented with the Special Administrative Measures "SAM," by the U.S. Attorneys office of the Southern District of New York, via false and fabricated information they claimed to have in their possession that plaintiff used the institution phone / mail communication's to order the murder of two federal law enforcement officials who were involved in plaintiff's criminal conviction.

Plaintiff then submitted administrative remedy "ARP" challenging the evidence used for the SAM imposition, and the unconstitutionality that stemmed from it's restrictions, with no relief what-so-ever plaintiff then file a civil action lawsuit in the district court in Denver Colorado requesting the court to order the U.S. Attorneys office to produce the evidence they used to request the SAM imposition, evidence in which they used to renew the SAM every year for four years. Plaintiff has continuously objected to the SAM imposition at both the M.C.C. and the ADX, and only after filing the civil action lawsuit then and only then the U.S. Attorneys office decided not to seek the renewal of said SAM.

Unfortunately after four years of the SAM imposition and the U.S. Attorney's office not seeking it's renewal in September of 2014, plaintiff is still subjected to it's restrictions. After the SAM was removed in September the ADX warden then immediately reimposed the restrictions stemming from the SAM. See Exhibit-A-1 & 2, restrictions which was removed due to the

## C. Nature Of The Case

fact that they were illegally imposed, claiming plaintiff is a security risk.

Plaintiff then file administrative remedy demanding the ADX warden to produce the evidence he used in considering that plaintiff is a security risk, that can actually justify his reasons for reimposing the SAM restrictions, and his response to plaintiff request for administrative remedy was totally absurd and illogical. See Exhibit -E-2

It is now extremely clear that because of the initial SAM imposition and its restrictions which had stemmed solely from false and fabricated allegation which was not clearify plaussable by the U.S. Attorneys office upon not seeking its reviewal, and the district court of Denver upon the dismissal of plaintiffs civil action lawsuit, the ADX warden now took it upon himself to take this illegal and unlawful position and reimposed the fraudulent restrictions which was removed due to it's illegality. A position that would now more or less gives the BOP any unjustifiable reason to used said fabricated allegation's to reimposed these restrictions whenever it is convenient to them without any reasons.

The U.S. Attorney's office, AUSA John O'Donnell and ATF agent Jason Zawsloff should be ordered by the court to produce this so-called evidence they allegedly claimed to have in their possession in order to provide clarity in this case. And if they

# C. Nature Of The Case

"cannot" produce this evidence they should be ordered to make it explicitly clear on the record that the allegations they used to request the SAM and its restrictions were in fact falsely fabricated.

It is now obvious that if said when the ADX warden decided to review and removed these fraudulently implemented restrictions, plaintiff confinement in itself at the ADX is a total violation of his constitutional rights. For the past four years plaintiffs condition of confinement has been essentially ignored by the government, the BOP and the ADX administration, given the nature of the constitutional violations he was and still is subjected to

Now after the SAM and it's restrictions were removed, the warden then subjected plaintiff to the restrictions he was once illegally subjected to. And plaintiffs placement in the so-called general population "G.P" of the ADX is in fact offensive and demoralizing that in part violates plaintiffs First, Fourth, Fifth, Eighth and Fourteenth amendment rights.

## D. CAUSE OF ACTION

State concisely every claim that you wish to assert in this action. For each claim, specify the right that allegedly has been violated and state all supporting facts that you consider important, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific cases to support your claim(s). If additional space is needed to describe any claim or to assert more than three claims, use extra paper to continue that claim or to assert the additional claim(s). The additional pages regarding the cause of action should be labeled "D. CAUSE OF ACTION."

1. Claim One: _First Amendment Rights Violation_

   Supporting Facts: Legal Standard for First Amendment Violation

While confined in prison a prisoner does not forfeit his first amendment protections of speech, press and association. U.S. Const. Amend. I; Bell v. Wolfish, 441 U.S. 520, 545 (1979); Pell v. Procunier, 417 U.S. 817, 822 (1974) (" [A] prison inmate retains those first amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objective of the corrections system.") A prisoners first amendment rights and the validity of a prisoner's restrictions on those rights are governed by the four part test set forth in Turner v. Safley, 482 U.S. 78, 89 (1987).


Argument

Incorporated herein in reference the argument contained in this proceedings is as though fully set forth in lenght.

All the above named defendants actions in connection with the reimposition, enforcement and accommodation of the restrictions and the condition of confinement, did so violated plaintiffs first amendment rights, and at all relevant time were acting within the scope of their official capacity in behalf of each other in mutual agreement to reimposed, enforce and accommodate the fraudulent restrictions and the demoralizing condition of confinement.

Attachment
Claim #1

# D. Cause Of Action

The defendants in this case reimposed these restrictions for no logical reason, and defendant R. Turner enforce's the restrictive policy to ensure that plaintiff has no possible mean's and/or access to communicate with his family, children's mother, step daughter's and friends, by rejecting plaintiffs mails to three of his childeen's mother's dating 9-2-2014 and two dating 9-4-2014. Two step daughter's dating 9-8-2014 and 9-3-2014, and two friend's dating 9-8-2014 and 9-2-2014. See Exhibit - B.1. SIS Turner even went as far as rejecting mail from the mitigating expert who were a part of plaintiffs legal defense team in his criminal case. See Exhibit - C.

SIS Turner's action's in no way shape or form can point to any rational reason for rejecting plaintiff's mails to his childeen's mother's, step daughter's and friends, and even more importantly she cannot states any rational reason for rejecting mail coming from the mitigating expert who was involved in plaintiff's criminal case. And these defendants action's did so violate plaintiffs first amendment rights to the U.S. constitution.

The defendants in no way shape or form can show any rational reason for reimposing these restrictions and how said restriction's were reasonable related to a legitimate peniological purpose. See Exhibit - A-1&2 restrictions that was previously imposed by the U.S Attorneys office of the "SDNY," by use of false and fabricated allegations in order to support its reasoning and defendants reasons to reimposed said restriction's is in fact

Attachment 2
Claim #1

## D. Cause of Action

fraudulent in order to required the reimposition of these restrictions. And the defendants actions leaves plaintiff without any meaningful alternative means in order to practice his rights to free speech under the first amendment

### First Amendment Violation
### Of Free Association

The defendants actions also violates plaintiff's first amendment rights to free association, and by reimposing the restrictions did so violates this right, and by rejecting plaintiff's mail communications also violates this right, because the reimposition of the restrictions did so prevent plaintiff from associating with his family, mother of his children, step daughters and friends.

The defendant's actions in restricting plaintiffs association with his family, mother's of his children's, step daughter's and friends in no way shape or form can show any rational reason why plaintiff's association with these individuals has any reasonable related legitimate penological purpose to the ADX prison facility security and/or the BOP prison system. It is also a fact that keeping plaintiff isolated for twenty three hour's a day five days a week, and two days of total isolation also violates this right to free association within the ADX facility, as the following units

## D. Cause Of Action

D, E, F and G are classified as general population units.

It is also a fact that all U.S.P. and any other open prison facility that's classified as general population, the inmate's are allowed to be out of their cell's from 6:am through to 9:pm. But the so-call general population units at the ADX, the inmates are isolated in their cells twenty three hour's a day five day's a week, which totally contradicts the terminology of general population and keeping the inmate's in these unit's isolated do so violates the right to free association with other inmate's within the facility.

### First Amendment Violation
### To free Exercise Of Religion

Defendant's actions also violates plaintiff's first amendment right's under the Religious Freedom Restoration Act. This violation did so deprived plaintiff of the right to free exercise of his religion, and also violates the religious freedom restoration act of 1993. The ADX policy in restricting religious practice's is not valid by law of general application that incidentally burdens religious conduct, and it is obvious that this was created specifically to target plaintiffs ability to freely exercise his religious belief, which also contradicts the policies of general population. See Exhibit-D

With respect to plaintiffs access to communicate

Amendment 4
Claim #1

## D. Cause Of Action

with family members, mothers of his childrens, step daughters and friends. A meaningful access to prison law library, access to free association with family, mothers of childrens, step daughters and friends, and also within the ADX prison facility. And access to practice his religion in accordance to the religious freedom restoration act, and the rational bases for reimposing these restrictions are similarly puzzling See Exhibit - A - 1 & 2.

The defendants cannot cite any rational reason why the violation of plaintiff's first amendment rights may have or did so interferes with the security running of the ADX prison facility or any legitimate penological interest to the ADX prison system, unless such reimposition of the restrictions were reimposed specifically for other motive's, to the extent that the defendants may suggest that the reimposition of the restrictions were related to a security concern. Such a suggestion without the actual physical evidence itself would be the sort of conjecture the Turner court held insufficient to pass mustered under the Turner test.

Plaintiff now request that this honorable court grant's an evidentiary hearing in this case, ordering the ADX warden, SIS Turner and the BOP in producing the evidence they used in reimposing the fabricated restrictions. Evidence SIS Turner also used and still using to reject plaintiffs mail communications to his family, mothers of his childrens

Attachment *5

Claim *1

# D. Cause of Action

step daughters and friends, and the mitigating expert
who was a part of plaintiffs legal defense team, and
even more importantly, the evidence they used to
deprived and violate's plaintiffs rights to free
association and free exercise of religion.

2. Claim Two: <u>Fourth, Fifth and Fourteenth Amendment Violation</u>

Supporting Facts: Legal Standard for Fourth, Fifth and Fourteenth Amendment Violation

Federal prisoner's does not lose their due process rights under the fourth, fifth and fourteenth amendment when they are committed to the Bureau of Prisons. U.S. Const. Amend. V, U.S. Const. Amend. XIV, Sandini v. Conner, 515 U.S. 472, 484 (1995).

In Sattar v. Gonzales, United States Magistrate judge Kristen L. Mix set forth the legal standard used to determine the extent of a prisoner's due process rights with relation to the imposition of SAM

"The Due Process Clause guarantees due process of life, liberty, or property." Chamber's v. Colo. Dept. of Corr., 205 F.3d 1237 1242 (10th Cir. 2000) (quotations omitted). A plaintiff must make two showing in order to proceed on a procedural due process claim.

Argument

Incorporated herein in reference the argument contained in this proceeding's is as though fully set forth in length

The above named defendant's actions in connection with the reimposition, enforcement and accommodation of the restrictions and the condition of confinement, did so violated plaintiffs due process right's, and at all relevant time were acting within the scope of their official capacity on behalf of each other in mutual agreement to reimposed, enforce and accommodate

(Rev. 1/30/07)                                          5

D. Cause Of Action

the fraudulent restrictions and the demoralizing condition of confinement.

This violation did so deprived plaintiff of his fourth, fifth and fourteenth amendment rights to due process, and all the defendants are equally liable for violating plaintiff's due process rights.

Plaintiff possesses a liberty interest in not being subjected to any kind of restrictions, because the restrictions imposed "atypical and significant hardship[s]" on him "in relation to the ordinary incidents of prison life" Sandin, 515 U.S. at 484. To name a few hardships, Plaintiff is not permitted to received or send mail or call his "family, Mothers of his children, step daughter's and friends."

Legal mail (arrives already opened out of plaintiffs presence), and anytime plaintiff is removed from his cell he is restrained, and every moves are restrictive, isolation twenty three hour's a day five days a week, and two days of total isolation. And every other week plaintiff would have three days inside recreation and two days outside and visavis, which plaintiff would be restrained and place in a rec. cage by himself for one and a half hour.

Plaintiff is only permitted two social phone calls per month, and can only communicate with individuals he is permitted to communicate with, and clearly neither of these hardship's are not typical incidents of prison life, and neither are they insignificant, each impacts

Attachment 7

claim 3

## D. Cause Of Action

on plaintiff's ability to lead a humane albet confined life in prison.

### The Inadequacy Of The Procedure's Used To Reimposed The Restrictions

Plaintiff did not received a sufficient initial level of process, short of the unit counselor handing plaintiff two piece's of document on September 23, 2014, one of which stated in part.

The purpose of this memorandum is to notify you that you are being placed on restricted general correspondence, pursuant to 28 C.F.R. §540.15, and your telephone is being restricted pursuant to 28 C.F.R. §540, subpart 1. Recently you were notified that your Special Administrative Measure's (SAM) were not renewed "and it is believed that your unlimited general written correspondence and telephone usage may facilitate further criminal activity" and pose a threat to security and good order of the institution and is needed for the protection of the public. Restricting your general correspondence is justified as you are considered a "Security Risk."

Which clearly did not provide plaintiff with the initial

Attachment 8
Claim #2

# D. Cause Of Action

level of process in order to meet the requirement that guarantees under the due process clause. And for the warden to speculate using the false and fabricated allegation orchestrated by AUSA John O'Donnell and ATF agent Jason Zarvaloff, "that it is believed that plaintiff's unlimited general written and telephone correspondence will facilitate further criminal activity," without any physical evidence and/or proof of such accusation, and only relying on section 28 C.F.R. §540-15, subpart 1, in order to justify his now illegal and unlawful action in reimposing the fraudulent restrictions clearly does not meets the requirement under the due process clause.

Second, plaintiff received no meaningful notice that the warden would have reimposed the restrictions as plaintiff was made aware of the reimposition through the unit counselor, and not by a representative from the office responsible (SIS/Legal Dept.) for informing inmates of any initial restrictive condition being imposed on that particular inmate. Third plaintiff received no meaningful opportunity to respond to the reimposition of the restriction.

Judge Mix's report and recommendation in Satter, the court found "that providing plaintiff notice that the SAM were to be imposed on the same day that they were allegedly put into effect, and providing only a vague statement as justification for there imposition, does not provide plaintiff effective or adequate "notice."

*Attachment #9*
*Claim #2*

## D. Cause of Action

Sattir 2008 WL 5712727*3.

It is obvious that plaintiff was actually place in the same position as the plaintiff in Sattir, where he was provided no meaningful notice as to the reimposition of the restrictions, and provided only a vague statement by the warden citing section 28 C.F.R. §540.15 as justi- -cation for it's reimposition, which clearly does not provide plaintiff effective or adequate notice.

Plaintiff was provided no meaningful opportunity to petition for review of the restrictions, or to respond to it's reimposition. These restrictions were reimposed in a manner that violates plaintiff's procedural due process rights, and in such ways that unreasonably restricted plaintiff's protected liberty interest in violation of his substantive due process rights, Plaintiff simple received no formal opportunity to contest the reimposition of the restrictions following its September, 2014, decision.

Instead plaintiff was afforded a meaningless opportunity in which to complete prison complaint form's "ARP," which every other phase of this remedy process concurred with the other and provides the inmate seeking it's assistance with no relief whatso-ever in which they routinely and summarily dismissed by way of written responses. See Exhibit-E-1-&-2

Defendants actions in reimposing the restrictions on plaintiff did so violates plaintiff's protected liberty interest and the procedure's used for it's reimposition

## D. Cause Of Action   Claim #2

was in fact inadequate that did so violates plaintiff's due process rights under the fourth, fifth and fourteenth amendment.

And this honorable court should deem the Administrative remedy Process inadequate and unreasonable in its process that provided no relief to the Recipient seeking its assistance

3.  Claim Three: <u>Eighth and Fourteenth Amendment Violation</u>

Supporting Facts:  Legal Standard For Eighth and Fourteenth Amendment Violation

When punishment is based on vague claim of gang affiliation. Ayers V. Ryan, 152 F.3d 77 (2d Cir. 1998).

The U.S. constitutional law and universal declaration of human rights "Law of the Land," proclaimed that all human has the inherent right to freedom from slavery, force labor torture, cruel inhuman degrading of prisoner's and to be recognized as a person before the Law.

## Argument

Incorporated herein in reference the argument contained in this proceedings is as though fully set forth in length.

The above named defendant's action's in connection with the reimposition, enforcement and accommodation of restriction's did so violated plaintiff's Eighth and Fourteenth Amendment right's, when through their actions did subjected plaintiff to cruel and unusual punishment stemming from the restrictive conditions he was place under.

The defendant's at all relevant time's were acting within the scope of their official capacity on behalf of each other in mutual agreement to reimposed, enforcee and accommodate the reimposition of the restrictions, and all defendants are equally liable for violating plaintiff's right's under the Eighth and Fourteenth Amendment.

ATTACHMENT
NO

## D. Cause Of Action                 Claim #3

Plaintiff is presently illegally housed in the countries most secured super max federal prison in Florence Colorado ADX. Pursuant to the use of false and fabricated allegations orchestrated by AUSA John ODonnell and ATF agent Jason Zamaloff. That plaintiff used the institution phone at the M.C.C New York to order their murder's. A claim that was submitted to the U.S. Attorney's office of the Southern District of New York, and they in return submitted said fabricated accusations to the U.S. Attorney General's office requesting the imposition of the Special Administrative Measure's SAM. The U.S. Attorney Generals office without investigating the Allegations did so imposed the SAM and it's restrictions.

After four year's of being on the SAM and housed in the Special Security unit "SSU", and subjected to severe restrictive torturous conditions that can only be considered as inhumanly cruel and degrading. Plaintiff then submitted and exhaust the prisons Administrative remedy process "ARP," with no possible relief, plaintiff then file a civil action lawsuit requesting an evidentiary hearing in order for AUSA John ODonnell and ATF agent Jason Zamaloff and the U.S. Attorney's office of the Southern District of New York, to produce the evidence they used to request the SAM. - Evidence that they used to review the SAM every year for four year's, the evidence they clearly stated they had in their possession. See Exhibit - F

## D. Cause Of Action

While the Ayee's case was based on a vaguely constructed claim, plaintiffs case is based solely on false and fabricate allegation's. An accusation that was clearly orchestrated by AUSA John O'Donnell and ATF agent Jason Zunsloff, which in fact did subjected plaintiff to cruel and unusual punishment in violation of his eighth and fourteenth amendment rights.

In September of 2014, the U.S. Attorney's office decided not to seek the renewal of the SAM, and immediately there after the ADX warden and the Bureau Of Prison "BOP," with no physical evidence what-so-ever reimposed the restriction's which had stemmed from the fabricated allegation which was used to request the SAM, citing 28-CFR §540-15 and program statement 5265-11 correspondence section 12 (a)(4) in order to justify their unlawful action that state's in part.

Recently you were notified that your Special Administrative Measure's "SAM" were not renewed, and it is "Believed" that your unlimited general written correspondence and telephone usage may facilitate further criminal activity and pose a threat to security and good order of the institution and is needed for the protection of the public. See Exhibit A-1, and judging from the content of the warden's statement, he had to be quoting from information he may have obtained from some where or some one. (US Attorney's office / ATF office).

And by reimplementing the restrictions without any physical evidence what-so-ever, and citing section 28-

Attachment
13
Claim #3

D   Cause   of   Action

CFR §540-15 to justify the reimposition and using a
vague ambiguous statement in order to reimposed said
restriction's did so subjected plaintiff to the restrictive
torturous condition's he was subjected to under the
SAM. And the decision made by the warders and the
BOP in reimplementing the restriction's did so violates
plaintiff's eighth and fourteenth amendment right's to
be free from cruel and unusual punishment.

Plaintiff did in fact tried to resolve this unlawful and
illegal action by the warden and the BOP, orally and in
writing See Exhibit-G-1&2, which is a request to the unit
counselor after mailing seven letter's to three of his childrens
mother's, two step daughter's and two friends, and after
not receiving an answer from any of the individuals.
Plaintiff then submit this request to the unit counselor
and learned that SIS Turner is still responsible for
plaintiff's communications, and she had the letter's in her
position, which she neither mailed and/or returned to
plaintiff, and only after inquiring about said letter's
she returned them with an incomplete rejection notice.
That doesn't adequately states why the letter were
being rejected and why plaintiff should not be permitted
to communicate with these individuals. See Exhibit -B-1

Exhibit-G-2, is a written request to one of the
facility Attorney Ben Brieschke informing him of the
reimposition of restriction's and requesting that he
address said reimposition because the sole purpose of
the civil action was to afford plaintiff the right to

# D. Cause Of Action                    Claim #3

communicate with his family and mothers of his childrens, and after receiving no answer from Mr. Brieschke plaintiff then submitted written response to the ADX administrative officials who were responsible for signing the notice of inmate restriction's. Exhibit 1-2, warden D. Berkebile, associate warden T. Hall and supervisory attorney C. Synsvoll, informing them of the fact that the restrictions they reimposed were based solely on false and fabricated allegations, and after filing a civil action requesting an evidentuary hearing the case was dismissed and the SAM removed.

And that it is wildly illogical and illegal for the BOP to adopt and reimposed the fraudulent restrictions and for them to facilitate the restriction's and implement some kind of monitoring in order to afford plaintiff the opportunity of communicating with the mother's of his childrens, step daughters, family and friends during this BOP six month's restriction, which plaintiff also submitted the information of the individuals he intended on communicating with. See Exhibit-H-1-2-3 & 4. And regardless of all the attempts made to resolve this issue neither of the officials chooses to respond to the request submitted to them. Plaintiff was given no realistic and/or logical justification for using said false and fabricated allegations to reimposed the fraudulent restrictions, and no alternative way out of this unlawful decision made by the warden and the BOP. See Exhibit-H-4.

# D. Cause Of Action          Claim #3

Exhibit-A-2, clearly state's lenght of restriction from effective date "9-2-2014" indefinite with periodic review in six month's. Plaintiff is now illegally placed in this unwarrented conditions, which before it was put into place the authorized personel staff member from SIS office or legal Dept. who should have informed plaintiff of it's reimposition did not take the initiative to do so. And now after six month's 4-20-2015 plaintiff was not informed of a review, or given the opportunity to raise his concerns regarding these restriction's at the review, nor has plaintiff heard from or saw anyone from SIS office or legal Dept. to informed him of the results of the review if there were even any. Which is fair to say, the reimposition of the resteriction's in itself is obviously fraudulent and should be deemed unlawful by the court in making sure that the wreden and the BOP does not used said fraudulent allegations to imposed or reimposed any more restrictions on plaintiff period.

## Condition's Of Confinement

The ADX penitentiary was designed specifically to housed the countries most so-called dangerous prisoner's within the federal justice system, which is obvious that the conditions of confinement at this specific facility is more restrictive and severe than at any other USP or federal prison facilities

# D. Cause of Action          Claim #3

within the BOP prison system. In part the ADX is being classified as a "General Population" facility. See Exhibit - I, when the fact of the matter is, the ADX facility in a whole considering its policies is in fact a Special Housing Unit "SHU". All movement within the ADX is classified as restrictive move's, whether it is movement to the prison law library, medical or recreation. Once the inmate leave's his cell, that inmate is restrained and escorted by two or three officer's to his designated destination, which is fair to say that this policy is the policy of the Special Housing Unit, not that of a general population facility.

Also in a open compounded "General Population" the prisoner's received three hundred minutes of phone usage per-month, while at the ADX, prisoner's are afforded thirty minutes of phone usage per-month, which totally contradicts the policies of general population. The recreational yard in a general population facility is open "meaning" there are designated area such as basketball court, handball court, and a workout area just to name a few. But in the ADX the prisoner's is placed in a individual rec. cage that isolate that inmate from the other individual rec. cages, whether it is inside or outside recreation, which again contradicts the policies of a general population facility, and clearly reflects the "SHU," policies and by referring to the ADX as a general population facility is actually committing an unlawful act of fraud.

# D. Cause Of Action          Claim #3

The fact of the matter is, after the removal of the SAM, plaintiff's classification should have went back to Normal and the BOP should have then transferred plaintiff to a regular USP instead of reimposing the fraudulent restrictions. It is widely believed that any severe restrictive treatment a prisoner is exposed to is actually viewed as a form of cruel inhuman and degrading punishment, and the fact that the warden and the BOP could just randomly reimposed these restrictions knowing that there were no legitimate penological interest or objective in relation to the security running or good order of the ADX and the correctional prison system is in fact a cruel and unusual act.

## Neglecting Serious Medical Issue's In Violation Of Eighth And Fourteenth Amendment

Plaintiff is suffering from bladder cancer a condition plaintiff had since 1996, a condition that requires a six month examination of the bladder for every six months by a urologist, to check for reoccurrence of the cancer and to see if it has advance through the muscle tissue of the bladder in order to determine surgery or a BCG treatment.

Before plaintiff was transferred to the ADX in March of 2011, In and around January, 2011 plaintiff realize it was extremely difficult to urinate

# D. Cause Of Action          Claim #3

January 19, 2011, wednesday morning at 10:00 O'clock plaintiff was transported to a medical office, where he was seen by a doctor Christopher Harrigan who examined the bladder and discovered ten tumor's one of which was in the urinary track which was posing the problem of urinating.

On January 28, 2011, plaintiff did an emergency surgery and removed all the tumor's which is clear that the BOP and ADX administration was fully aware of this issue before transferring plaintiff to the ADX. But nevertheless chooses to ignore its existence, and in the process neglect to address this issue appropriately and provide plaintiff with the adequate medical assistance he require's.

Plaintiff is also suffering from diabetes a condition, that come's with it's own complication's and the ADX facility does little or nothing to facilitate these medical issue, and by neglecting these medical issue's did so violates plaintiff eighth and fourteenth amendment rights to be free from cruel and unusual punishment.

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ___ Yes ___ No  (CHECK ONE).  If your answer is "Yes," complete this section of the form.  If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit.  The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1. Name(s) of defendant(s) in prior lawsuit:

   *Eric Holder Jr., et Al*

2. Docket number and court name:

3. Claims raised in prior lawsuit:

   *Feist, Fourth, Fifth, Eighth and Fourteenth Amendment*

4. Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?):

   *Dismissed*

5. If the prior lawsuit was dismissed, when was it dismissed and why?

   *3/14/2014, Did Not pleaseable Plead the case. And jurisdictional issues*

6. Result(s) of any appeal in the prior lawsuit:

   *None*

## F. ADMINISTRATIVE RELIEF

1. Is there a formal grievance procedure at the institution in which you are confined?

   ✓ Yes ___ No  (CHECK ONE).

2. Did you exhaust available administrative remedies? ✓ Yes ___ No  (CHECK ONE).

(Rev. 1/30/07)                    7

## G. REQUEST FOR RELIEF

State the relief you are requesting. If you need more space to complete this section, use extra paper. The additional requests for relief should be labeled "G. REQUEST FOR RELIEF."

Plaintiff now respectfully moves this honorable court According to the U.S. constitution And the Religious freedom Restoration act of 1993, in granting the following relief

(1) That this court issue an injunction ordering the defendants to

A: Produce the evidence they used to Reimposed the restrictions And used to consider plaintiff a security Risk

B: To Also produce the source of the evidence in which they used to Reimposed the restrictions

## DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed on ___4/20/2015___
(Date)

___A. Dc_____
(Prisoner's Original Signature)

(Rev. 1/30/07)                                8

G. Request For Relief

C-: And further produce the conclusion
of their review in September 2, 2014
that was used to consider plaintiff a
security risk.

(2) Issue a declaratory judgement declaring that the
defendants actions either separately and/or concerted
in connection to the reimposition of the restrictions and
the rejection of plaintiffs mail communications

A-: Did so violates plaintiffs first amendment
rights to free speech, and association
when he was deprived the right to
communicate with his family, mothers of
his children, step daughters and friends.

B-: Did so violates plaintiffs fourth, fifth
and fourteenth amendment rights to
due process, when he received no
meaningful notice of the reimposition
of the restriction's, and no meaningful
opportunity to respond to its reimposition

C-: Did so violates plaintiffs eighth and
fourteenth amendment rights to be free
from cruel and unusual punishment,
when he was denied access to medical
assistance, and subjected to extreme

G - Request For Relief

Severe conditions due to the used of false and fabricated allegations

(3)  Issue a preliminary injuction ordering the defendants to stop their illegal and oppressive monitoring of plaintiffs communications mail and phone. And to immediately removed plaintiff from SIS Turner's case load.

(4) Issue a preliminary injuction ordering the ADX administration, and the BOP in reclassifying plaintiff which they should have done when the SAM was Removed. And immediately transfer plaintiff to a regular USP instead of subjecting him to another "Step Down" program, where plaintiff can have adequate access to medical assistance and treatment



(1)  Memorandum for telephone and general correspondence restriction Status

(2)  Notice of inmate restrictions U.SP-administrative MAXIMUM Florence Colorado

 *Exhibit A-1*



**U.S. Department of Justice**
Federal Bureau of Prisons

Federal Correctional Complex
☑ *Administrative Maximum Security Institution*
☐ *High Security Institution*
☐ *Medium Security Institution*
☐ *Minimum Security Institution*

---

*Office of the Warden*

Florence, CO 81226

September 2, 2014

MEMORANDUM FOR ALTON DAVIS, REGISTRATION NUMBER 59854-054

FROM:          D. Berkebile, Warden

SUBJECT:          **Telephone and General Correspondence Restriction Status**

The purpose of this memorandum is to notify you that you are being placed on restricted general correspondence, pursuant to 28 C.F.R. § 540.15, and your telephone is being restricted pursuant to 28 C.F.R. § 540, subpart I.  Recently you were notified that your Special Administrative Measures (SAM) were not renewed and it is believed that your unlimited general written correspondence and telephone usage may facilitate further criminal activity and pose a threat to security and good order of the institution and is needed for the protection of the public.  Restricting your general correspondence is justified as you are considered a "security risk" pursuant to Program Statement 5265.11, <u>Correspondence</u>, section 12 (a) (4). Accordingly, your general correspondence (incoming/outgoing) is limited to/from verifiable immediate family members only (spouse, mother, father, children, and siblings.  Additionally, your telephone is limited to/from verifiable immediate family members only (spouse, mother, father, children, and siblings).  Your placement on this status will be reviewed in six months to determine if it should be renewed.  You may request that additional individuals be added to your list of approved contacts at any time by submitting your request in writing to the SIS office.  Your request will be reviewed and you will be notified of the decision.

You are permitted to respond to your being placed on restricted telephone and general correspondence, orally or in writing, and a written response will be provided by the Federal Bureau of Prisons (Bureau).  You may consider this an attempt at informal resolution under the Bureau's Administrative Remedy Program.  In addition, you may seek a formal review of the decision to place you on Restricted General Correspondence Status through the Bureau's Administrative Remedy Program.

Received: September 28, 2014.

*12:04 PH*

_____
Alton Davis, Register Number 59854-054

*Exhibit A-2*

## NOTICE OF INMATE RESTRICTIONS   USP- ADMINISTRATIVE MAXIMUM, FLORENCE, COLORADO
## U.S. DEPARTMENT OF JUSTICE                                          FEDERAL BUREAU OF PRISONS

| INMATE NAME (LAST, First): | REGISTER NUMBER: | UNIT/QUARTERS: |
|---|---|---|
| DAVIS, ALTON | 59854-054 | E-Unit |

**TYPE OF NOTIFICATION:**

   X  Initial

**TYPE OF RESTRICTION:**

   X Other: General Correspondence Restriction and Telephone Restrictions

**LENGTH OF RESTRICTION FROM EFFECTIVE DATE:**

   X Indefinite (with periodic review) Review in 6 months   ☐ Other:

   *These restrictions are appealable using the Administrative Remedy Program, 28 C.F.R. § 542*

**GENERAL CORRESPONDENCE:** *Pursuant to 28 C.F.R. § 540, Subparts A, B and F*

   X You are permitted to correspond with the following individuals only: Members of your immediate family (spouse, mother, fa
   children and siblings).

   x Rationale: You were removed from Special Administrative Measures and placed in a less restrictive housing unit, but you
   still pose a security risk.

**SPECIAL/LEGAL MAIL:** *Pursuant to 28 C.F.R. § 540, Subparts A & B*

   X No restriction to special/legal mail

**TELEPHONE:** *Pursuant to 28 C.F.R. § 540, Subpart I*

   x Other: Your telephone calls are limited to your immediate family (spouse, mother, father, children and siblings).

**VISITING/MEDIA (Court Ordered or SAM only):** *Pursuant to 28 C.F.R. § 540, Subparts D & E*

   X No restriction to social visiting privileges

**OTHER JUDICIAL ORDER OR SPECIAL ADMINISTRATIVE MEASURE RESTRICTIONS:**

| Unit Manager Review: Printed Name/Signature | Legal Services Review: Printed Name/Signature |
|---|---|
| P. Rangel, Unit Manager | C. Synsvoll, Supervisory Attorney |

| Associate Warden (P) Review: Printed Name/Signature |
|---|
| T. Hall, Associate Warden |

| Warden: Printed Name/Signature | Effective Date: |
|---|---|
| D. Berkebile, Warden | 09/08/14 |

| Inmate Printed Name/Signature | Register Number | Date |
|---|---|---|
| | | |

Printed Name/Signature of Staff Witness

You may seek a formal review of this decision through the Federal Bureau of Prisons' Administrative Remedy Procedure. The procedure
requires that you first address your complaint to the Warden. If dissatisfied with that response, you may appeal your complaint to the
Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue,
Kansas City, Kansas 66201-2492. If dissatisfied with the Regional Director's response, your may appeal to the Director, National Inmate
Appeals, in the Office of the General Counsel in Washington D.C.
**Distribution: Original - Central File; cc - Inmate, Mail Room, Legal Services**

9-23-2014

12:04 pm



Exhibit - B - 1 & 2

(1) Memorandum for Inmate Mail Rejection

That clearly did Not states the reason for
and/or why these individuals were submitted
for "Rejection"

2) ARP requesting to be removed from SIS Turner's
case load due to an ongoing conflict of interest
were she called plaintiff a Black Bastard which
is offensive and obviously racist

*Exhibit - B - 1*



**U.S. Department of Justice**
Federal Bureau of Prisons

*United States Penitentiary –*
*Administrative Maximum*

Florence, Colorado  81226

September 23, 2014

MEMORANDUM FOR  T. Poland, SCSS

FROM:                         R. Turner, SIS Technician

SUBJECT:                   Inmate Mail Rejection:  DAVIS, A., #59854-054

The attached correspondence is submitted for rejection for the following reason(s):

THE OUTGOING CORRESPONDENCE TO:
MELVINA JACKSON X2
JULIE BLESKY
SATCHELLE TYRELL
DIONINE QUESTELLER
RENEE FORD

ARE NOT CORRESPONDANTS ACCORDING TO DAVIS' MAIL RESTRICTION.  THEREFORE,
THE LETTERS ARE REJECTED.

-Exhibit - B - 2

ALTON DAVIS, 59854-054
FLORENCE ADMAX USP    UNT: E    QTR: E02-210L
PO BOX 8500
FLORENCE,  CO 81226

MAR 3 0 2015

*Exhibit-B-2*

**Administrative Remedy No. 775427-A1**
**Part B - Response**


This is in response to your Central Office Administrative Remedy Appeal where you allege the SIS Technician at ADX Florence is unlawfully and illegally monitoring your social mail and telephone communications.  You also allege this staff member made a racist comment toward you and delays your mail.  You request a remedy for this ongoing situation and to be removed from the SIS Technician's caseload.

The Warden and Regional Director adequately addressed your complaint and advised your allegation of unprofessional conduct by a staff member at ADX Florence has been referred to the appropriate office for review pursuant to Program Statement 3420.11, Standards of Employee Conduct.  A thorough review will be conducted and proper action taken as deemed necessary.

While you are no longer under the restrictions of a Special Administrative Measures, you have been advised that the need for closer scrutiny of your communications has been deemed necessary. As such, you were placed on and given notice of a General Correspondence Restriction and Telephone Restrictions.  You are also aware this status is reviewed every six months to determine if the restrictions remain necessary, and you have the opportunity to raise any concerns regarding these restrictions at each review.  While minor delays may occur due to the additional monitoring, staff's actions are not unlawful or illegal.  Safety and security is paramount and we concur with the decision in this matter.

This response is provided for informational purposes.


_3/6/2015_
Date

_Rick Rodgers_
Acting Administrator
National Inmate Appeals

MAR 3 0 2015

Exhibit-15-2

**U.S. Department of Justice**

**Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

775427.R' 11/21/14

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: DAVIS AltON R _____ 59854-054 _____ E _____ ADX-MAX
          LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.        UNIT         INSTITUTION

**Part A - REASON FOR APPEAL** My Request for ARP is clear IN My Bp-9 that there
is an ongoing conflict of interest between both Myself and SIS
Turner, during which she used illustrative racist comment towards
Me by calling Me a Black Bastard.
    The warden's answer to my Bp-9 stated that all staff are held
to a high standard of treating inmate's fairly, impartially and
humanely, which is clear that calling Me a Black Bastard and
threatening to not schedule my social calls is in fact not fair
impartial nor humane.
    Unfortunately seven months later after receiving the wardens
answer to My Bp-9 there were obviously no attempts made to removed
Me from Turner's case load Regardless of her display of unfair and
Racial treatment towards Me, I submitted Bp-10 hoping that after
the SAM Removal I was moved to a different unit that is
Managed by a different unit team, which is clear that I should

11-28-2014 _____     A. Da _____
     DATE                    SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED

DEC 08 2014

Administrative Remedy Offic
Federal Bureau of Prisons

_____          GENERAL COUNSEL  775427
        DATE

ORIGINAL: RETURN TO INMATE          CASE NUMBER: 775427

**Part C - RECEIPT**                        CASE NUMBER: _____

Return to: _____
              LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT       INSTITUTION
SUBJECT: _____

_____          _____
        DATE                      SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

                                                                    BP-231(13)

have been removed from SIS Turners case load
also

# Exhibit - C

(1)  U.S. Department of Justice Rejection form

The rejection of mail from the mitigating expert
in plaintiff's criminal case, that SIS submitted for
rejection, which they had no logical reason for
this rejection.

*Exhibit - C*

BP-S327.058                                    **RETURNED CORRESPONDENCE** CDFRM

MAY 94

U.S. DEPARTMENT OF JUSTICE                     FEDERAL BUREAU OF PRISONS

---

| | |
|---|---|
| **TO:**  (Sender-See Return Address)<br>CVA Consulting Services | **FROM:**<br>United States Penitentiary<br>Administrative Maximum<br>P.O. Box 8500<br>Florence, CO 81226-8500 |
| **RE:**  (Inmate's Name and Register No.)<br>DAVIS, Alton      59854-054/E | **DATE:**<br>November 5, 2014 |

**SUBJECT:**   Correspondence With Inmate Returned

Your correspondence to the above named inmate is being returned.   This correspondence was not delivered to the inmate because you are not approved to correspond with this individual.

The rejection of this correspondence is in accordance with the Federal Bureau of Prisons policy on "Correspondence" as published in Title 28 Code of Federal Regulations, Part 540 and in the Federal Bureau of Prisons Program Statement on correspondence.   You have the right to appeal this rejection by writing the Warden in care of the above address.   The inmate to whom you addressed your correspondence has been notified that this correspondence has been returned to you and of his or her right to appeal the rejection.   Any inquiry concerning this rejection will need to be referred to the following address: Federal Bureau of Prisons, ATTN:   FOIA, 320 First Street, N.W. Washington, D.C. 20534.

B. True, Associate Warden BT/rjm
(Printed or Typed Name and Written Signature of the Warden)
Record Copy - Addressee (with Correspondence); Copy - Inmate; Copy - File (with copy of Correspondence)
(This form may be replicated via WP)                    Replaces BP-327(58) of FEB 84

# Exhibit - D

(1) Note from the Chaplains Office

The chaplain admitted that congregate services are not "Available" at the ADX

*Exhibit - D*

## <u>A NOTE FROM THE CHAPLAINS OFFICE</u>
February 27, 2015

Religious Services has received your request, congregate services are not available at the ADX.
Religious Programming is provided via channel 55 on your television

K. Hanna
Religious Services Assistant



Exhibit - E - 1 & 2

(1)  ARP challenging the reimposition of the restrictions
which both the regional director and the central
office concurred with the warden's decision instead
of implementing some kind of remedy to this fraudulent
decision made by the warden and the BOP.

(2)  ARP challenging the warden and the BOP to
produce the evidence they used to consider
plaintiff being a security risk.

Exhibit-E-1

```
ALTON DAVIS, 59854-054
FLORENCE ADMAX USP     UNT: E     QTR: E02-210L
PO BOX 8500
FLORENCE,  CO 81226
```

MAR 3 0 2015

_Exhibit - E-1_

**Administrative Remedy Number 791614-A1**
**Part B - Response**


This is in response to your Central Office Administrative Remedy
Appeal where you allege you are being denied the right to communicate
with your family and friends although your Special Administrative
Measures (SAM) was not renewed.  You argue the imposition of
restrictions on your communications is unlawful and unwarranted.
You feel due process has been violated and request the institution
produce the evidence being used to support the restrictions on your
communications.

While you are no longer under the restrictions of a SAM, you have
been advised that the need for closer scrutiny of your communications
has been deemed necessary.  As advised by the Regional Director, you
were placed on and given notice of a General Correspondence
Restriction and Telephone Restrictions.  This status is reviewed
every six months and you have the opportunity to raise any concerns
regarding these restrictions at each review.  Safety and security
is paramount and we find staff's actions and decision in this matter
are not unlawful or a violation of your due process rights.


Records indicate you are permitted to communicate with your immediate
family members.  If you seek to communicate with additional friends
and family, you must submit a request to the SIS office for review
and consideration.  In addition, if you seek specific information
or documentation in support of your restrictions, submit a request
to the SIS office.  If you are denied any information not releasable
at the institution level, you may submit a request for release of
these documents to the Freedom of Information/Privacy Act Unit in
the Office of General Counsel.

This response is provided for informational purposes.


_3/6/2015_
Date

Acting Administrator
National Inmate Appeals

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

791614-R1    no 1/23/15

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: __Davis Alton R__  __59854-054__  __E__  __ADX-MAX__
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL** It is obvious that the BOP remedy process "ARP" was designed solely to concur with the wardens decision regardless of how incorrect that decision is, or whatever ethical and/or moral principles or practice that decision may have violated. And tends to offer no relief whatsoever to the recipient seeking assistance through said remedy process.

It is clear that the ADX warden did so violated my due process and first amendment rights when it reimposed a restriction that was imposed by used of false and fabricated allegations, and was removed due to the fact that the U.S Attorneys office of New York fail to produce the evidence they alleged to have in their possession.

And I am again requesting that the ADX warden produce the evidence it used to consider, in order to restrict my communications.

__1-30-2015__
DATE                                    SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED

FEB 1 0 2015

Administrative Remedy Office
Federal Bureau of Prisons

_____    GENERAL COUNSEL
DATE

ORIGINAL: RETURN TO INMATE    CASE NUMBER: __791614__

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

_____    _____
DATE                           SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)

Exhibit -E-2

```
ALTON DAVIS, 59854-054
FLORENCE ADMAX USP    UNT: E    QTR: E02-210L
PO BOX 8500
FLORENCE,  CO 81226
```

MAR 30 2015

*Exhibit - L - 2*

**Administrative Remedy No. 800152-A1**
**Part B - Response**


This is in response to your Central Office Administrative Remedy
Appeal where you challenge the correspondence restriction
imposed upon you at ADX Florence after your Special
Administrative Measures (SAM) was removed.  You state the
relevant agency determined the SAM was no longer necessary and
you question what evidence is now being used to determine you
are a security risk.

The Warden and Regional Director adequately addressed your
complaint and we concur with the responses provided.  As
advised, you were placed on restricted general correspondence
and telephone restriction status after removal of your SAM.  The
Warden is authorized to restrict an inmate's social telephone
and general mail privileges to ensure the safety, security and
orderly running of the institution, as well as the safety of the
public.  You were advised of your status and that additional
monitoring of your communications was deemed necessary.  This
status will be reviewed every six months to determine its
appropriateness.  You may also raise any concerns at each
review.  Safety and security is paramount and we find staff
demonstrated sound correctional judgment regarding this matter.


In addition, if you seek specific information or documentation
in support of your restrictions, submit a request to the SIS
office.  If you are denied any information not releasable at the
institution level, you may submit a request for release of these
documents to the Freedom of Information/Privacy Act Unit in the
Office of General Counsel.

This response is provided for informational purposes.


_3/6/2015_
Date

_Pako dogly_
Acting Administrator
National Inmate Appeals

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

800152·R1      12/30/14

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: __DAVIS Alton R__      __59854-054__      __E__      __ADX-MAX__
         LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A - REASON FOR APPEAL** My grievance is obviously not about the warden's ability to place an inmate on restrictions, but the fact that the warden should not be permitted to just used the program statement 5265.14 as a talking point to imposed a restriction without clearly any evidence.

In this case the warden reimposed restriction's that was previously removed by the entity that had imposed them in the first place specifically because they lied about the allegation's in order to have the SAM imposed along with it's restriction's. Now the warden actually reimposed the restriction's which had stemmed from false and fabricated allegation's.

And the warden should have not reimposed these restriction's based on the legal technicality surrounding it's imposition, And my remedy request is clearly for the warden and the ADX administration to produce the evidence they use to consider me being a security risk's.

__1-2-2015__      __A. D___
         DATE      SIGNATURE OF REQUESTER

**Part B - RESPONSE**

JAN 1 2 2015

Administrative Remedy Office

_____      _____
DATE                          GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE      CASE NUMBER: __800152-A1__

**Part C - RECEIPT**

                                                     CASE NUMBER: _____

Return to: _____
              LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION
SUBJECT: _____

_____                          _____
DATE                          SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)

# Exhibit - F

(1) SAM memorandum dated September 10, 2010, which clearly states that the U.S. Attorneys office of the Southern District of New York has the evidence in their possession that was use to request the SAM imposition

*Exhibit - F*



UNITED STATES GOVERNMENT
## MEMORANDUM
METROPOLITAN CORRECTIONAL CENTER
NEW YORK, NEW YORK

**DATE:** September 10, 2010
**REPLY TO**
**ATTN OF:** Suzanne R. Hastings, Warden

**SUBJECT:** Origination of Special Administrative Measures (SAM)
Pursuant to 28 C.F.R. §501.3 (c)

**TO:** Inmate DAVIS, Alton
Register No.: 59854-054

Pursuant to 28 C.F.R. §501.3 (c), Special Administrative Measures (SAM) are being implemented regarding your confinement. The Bureau of Prisons adopted these special administrative conditions based on information of your proclivity for violence. Specifically, on May 3, 2010, you were convicted of 8 criminal counts, including counts charging you with the brutal murders of two victims during two separate home-invasion robberies. In addition, there is information that, while incarcerated, you tried via phone and/or mail communication to order the murders of two federal law enforcement officials who were involved in your criminal convictions. As a result, there is a substantial risk that your communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons. Therefore, you are restricted in access to the mail, the media, the telephone and visitors. This SAM will commence immediately and will be in effect for one year, subject to my further direction.

SPECIAL ADMINISTRATIVE MEASURES (SAM)
Pursuant to 28 C.F.R. § 501.3 (c)
Inmate - Alton Davis

1.   **General Provisions:**

   a.   **Adherence to Usual United States Marshals Service (USMS), Bureau of Prisons (BOP) and Detention Facility (DF) Policy Requirements** - In addition to the below-listed SAM, you must comply with all usual USMS, BOP, and non-BOP DF policies regarding restrictions, activities, privileges, communications, etc. If there is a conflict between USMS/BOP/DF policies and the SAM, as set forth herein, where the SAM is more restrictive than usual USMS/BOP/DF policies, then the SAM shall control. If usual USMS/BOP/DF policies are more restrictive than the SAM, then USMS/BOP/DF policies shall control.

-1-

# Exhibit - G - 1 & 2

(1) Request to the Unit counselor concerning plaintiffs social mail, and requesting to know if plaintiff is being monitored and by whom

(2) Written request to the facility attorney Ben Brieschke after learning of the reimposition of the restrictions.

Davis Alton                                    To: Counselor
59854-054                                      Mr. Cedeno
9-22-2014                                       Unit E02-212

                        Request !!

    I write in reference concerning social mail, I
would like to know if my social mail is being
monitor by SIS, and if so whats the name of the
tech responsible or incharged of said monitoring
    I would also like to know if there some kind
of monitoring going on with my social mail why I
wasn't informed of such monitoring.
    And if there an actual monitoring going on
the ADX administration and the BOP needs to
furnish something in writing stating the reason
for the monitoring and who authorize said
monitoring

1-of-2

- Exhibit - G-2

Davis Alton                                      To: Facility Atty.
59854-054                                        Ben. Brieschke
9-25-2014                                        Unit: E02-212

Request !!

    I write in reference regarding a very important issue, it is obvious that the SAM's was not renewed in September 2, and upon my placement in E-unit, I was unaware of a BOP restriction. In and around Sept. 3, through to 9th, I mailed letter's to three of my children's mothers, two step daughter's and two friends, unfortunately SIS Turner held on to my letter's without any notification.

    After talking to my aunt, I asked her if she was aware of one of my friend's receiving my letter and she say's no. I call one of my daughter's and spoke with her mother, I asked her if she had received my letter and she said no, I then spoke with counselor Cedeno about the situation who a advise me that someone will come and talked with me, on Sept. 23, two weeks after I mailed my letter's out counselor Cedeno came to my cell and handed me some papers titled memorandum for inmate restriction, and inmates information on restriction. Sept. 25, the letter's were returned to me from SIS Turner with a paper stating memorandum for T. Poland SCSS. The attached correspondence is submitted for rejection for the following reason's, and it states no logical reason for the rejections.

2-of-2
Request to Beieschke
Exhibit - G-2

It is obvious that the rejection's of these individuals were orchestrated by SIS Turner, because one of the paper I received from Counselor Cedeno stated who I can and cannot called, and it's clearly stated spouse, mother, father and siblings, which is clear that the letters to the mothers of my childrens should be consider spouse because I was actually living with them.

All I'm saying MAN, I need for you to address this issue for me, because my civil action against the SAM was for the sole purpose to communicate with the mother's of my children and other family member's, and if what the prosecutor's and agents accuse me of were in fact true, do you think they would have removed the SAM, "Hell No", so tell SIS Turner to back up off me, and stop creating situations thats Not there



# Exhibit-H

(1) Written request to warden D. Berkebile in response to the reimposition of the restrictions

(2) written request to the associate warden in response to the reimposition of the restrictions

(3) written request to the facility attorney in response to the reimposition of the restrictions

(4) written request to warden J. Oliver requesting that he facilitate the restriction and afford plaintiff the right to communicate with his family mothers of children, step daughters and friends

Exhibit - A - 1

Davis Allen
59854-054
9-29-2014

To: Warden
D. Berkebile
Unit, E 02-312

Request !!

I write in reference concerning the reimposition of restriction which was imposed by the U.S. Attorneys office of the "SDNY", and Special agent of the ATF in a joint elaborate conspiracy to oppress my ability to articulate a meaningful appeal, and in the process of doing so also disenfranchised my family.

For the past four year's I was restricted from communicating with my family, mothers of my children and friends by use of false and fabricate accusation, and after filing a civil action requesting a evidentiary hearing, my case was dismiss and the SAM removed. Now the Bureau Of Prison's has now adopt and reimposed these same restrictions which was based solely on false and fabricated accusation which is wildly illogical and extremely illegal.

I am now requesting that you facilitate this fabricated restriction on my communications in order for me to correspond with the mothers of my childrens and my family, I've already lost two of my daughters due to these false restrictions that had restrict my communications with their mothers, and I don't intend on losing anymore of my children's due to the lack of poor and or inadequate communications

Which is fair to say, during this period of this BOP restriction. I am requesting that the ADX administration implement some kind of monitoring as far as my communications is concerned to afford me the right to communicate with the mothers of my childrens, step daughters and other family members. I have no intentions of facilitating anything illegal nor do I intended on putting any of my childrens mothers in any position that would deprived my children of their mothers presence in their life, these are the information of the individuals I intend on communicating with.

Melvina Jackson
Mother of my daughter

Julie Blesky
friend

Ashwesk Jackson
Step daughter

Desine Questelles
friend

Michelle White
Mother of my daughter

Satchelle Tyeell
Step daughter

Renee Ford
Mother of my daughter & son

Davis Allen
59854-054
9-29-2014

To: A. W
Ms. Hall
Unit: EO2-212

## Request !!

I write in reference concerning the reimposition of restriction which was imposed by the U.S. Attorney's office of the "SDNY", and Special agent of the ATF in a joint elaborate conspiracy to oppress my ability to articulate a meaningful appeal, and in the process of doing so also disenfranchised my family

For the past four years I was restricted from communicating with my family, mother of my children and friends by use of false and fabricate accusation, and after filing a civil action requesting a evidentiary hearing my case was dismiss and the SAM removed. Now the Bureau of Prisons has now adopt and reimposed these same restrictions which was based solely on false and fabricated accusation which is wildly illogical and extremely illegal.

I am now requesting that your facilitate this fabricated restriction on my communications in order for me to correspond with the mothers of my childrens and my family. I've already lost two of my daughters due to these false restrictions that had restrict my communication's with their mothers, and I don't intend on losing anyone of my childrens due to the lack of poor and or inadequate communications

Which is fair to say, during this period of this BOP restriction. I am requesting that the ADX administration implement some kind of monitoring is far as my communication's is concerned to afford me the right to communicate with the mother of my children's, step daughter's and other family members. I have no intentions of facilitating anything illegal nor do I intended on putting any of my children's mother's in any position that would deprived my children's of their mother's presence in their life, these are the information of the individuals I intend on communicating with

Melissa Jackson
Mother of my daughter

Julie Blevay
Friend

Ashriell Jackson
Step daughter

Divine Questelles
Friend

Michelle White
Mother of my daughter

Satchelle Tyrell
Step daughter

Renee Ford
Mother of my daughter & son

Davis Alton
59854-054
9-29-2014

To: Facility Atty:
Mr. C. Synsvoll
Unit: E 02 - 212

## Request !!

I write in reference concerning the reimposition of restriction which was imposed by the U.S. Attorneys office of the "SDNY," and Special agent of the ATF in a joint elaborate conspiracy to oppress my ability to articulate a meaningful appeal, and in the process of doing so also disenfranchised my family.

For the past four years I was restricted from communicating with my family, mother's of my children and friends by use of false and fabricated accusation, and after filing a civil action requesting a evidentiary hearing, my case was dismiss and the SAM removed. Now the Bureau of Prisons has now adopt and reimposed these same restrictions which was based solely on false and fabricated accusation which is wildly illogical and extremely illegal.

I am now requesting that you facilitate this fabricated restriction on my communications in order for me to correspond with the mother's of my children and my family. I've already lost two of my daughter's due to these false restriction's that had restrict my communications with their mother's, and I don't intend on losing anymore of my children's due to the lack of poor and or inadequate communication's

Which is fair to say, during this period of this BOP's

restriction. I am requesting that the ADX administration implement some kind of monitoring as far as my communications is concerned to afford me the right to communicate with the mothers of my childrens, step daughter's and other family member's. I have no intentions of facilitating anything illegal nor do I intended on putting any of my childrens mothers in any position that would deprived my children of their mother's presence in their life, these are the information of the individuals I intend on communicating with.

(1)   Melvina Jackson
      Mother of my children

(2)   Ayshwerk Jackson
      Step daughter

(3)   Michelle White
      Mother of my daughter

(4)   Satchelle Tyrell
      Step daughter

(5)   Renee Ford
      Mother of my daughter & son

(6)   Julie Bleary
      Friend

(7)   Divine Questellas
      Friend

- Exhibit · A-4

RECEIVED

NOV 19 2014

ADX Warden's Office

Davis Alton
59854-054
11-17-2014

To: Warden
Mr. Oliver
Unit: E02-212

Request !!

For the past four year's I was restricted from communicating with my family, mothers of my childrens, step daughter's and friends, By use of false and fabricated accusation, and after filing a civil action requesting an evidentiary hearing my case was dismissed and the SAM removed. Unfortunately the ADX administration has now adopted and reimposed these same restriction that I had address via civil action

I am now requesting that you facilitate this restriction which is based solely on false and fabricated allegation in order for me to communicate with the mothers of my children, step daughter's and extended family member's

Which is fair to say, during the time period of this ADX restriction, I am requesting that you implement some kind of monitoring as far as my communication's is concerned, in order to afford me the right of communicating with my step daughters, mothers of my children and family members

This issue is being address via Admin Remedy 800152-F1 you will receive a response in the near future.

Thank You!!
A. Da...

# Exhibit - I

(1) A document refering to the ADX A being A General Populations facility

*-Exhibit - I*

# ADX Florence
# Inmate Bulletin

## *General Population & Step-Down Privilege Incentive Program*

ADX staff developed a program which will be offered to all inmates in the General Population and Step-Down units. The program is called the Privilege Incentive Program (PIP). The purpose of the Program is to provide incentives for inmates who are on prolonged disciplinary restrictions to participate in available programs and maintain clear conduct, furthering the mission of the General Population and Step-Down Program. As inmates participate in programs, it is possible for inmates to have certain privileges restored that were suspended through the discipline process. A goal of this program is to assist inmates by enhancing and promoting the Bureau of Prisons' reentry initiative which encourages them to build better community ties with other individuals.

The Program is a four-level program. The types of available incentives are determined by the level. Every inmate confined in the General Population and Step-Down units who are on prolonged disciplinary telephone, visiting, and/or commissary restriction has the opportunity to demonstrate he may be afforded these privileges. Inmates demonstrating positive programming for 3 consecutive months may be considered for an exception to their disciplinary sanction. Additional privileges will be awarded as follows (all inmates start at Level 1):

| Level | Time Period | Telephone Incentive |
|-------|-------------|---------------------|
| 1 | 3 months meeting requirements<br><br>Incentives are for the next three months, or expiration of sanctions | 1 15 minute phone call per month<br>$40 commissary purchase per month<br>1 social visit per month |
| 2 | 6 months meeting requirements<br><br>Incentives are for the next three months, or expiration of sanctions | 1 15 minute phone call per month<br>$80 commissary purchase per month<br>2 social visit per month |
| 3 | 9 months meeting requirements<br><br>Incentives are for the next three months, or expiration of sanctions | 1 15 minute phone call per month<br>$120 commissary purchase per month<br>3 social visit per month |
| 4 | 12 months meeting requirements<br><br>Incentives continue as long as inmate meets eligibility criteria, or expiration of sanctions | 2 15 minute phone calls per month<br>$160 commissary purchase per month<br>4 social visit per month |

Inmates must demonstrate positive programming by meeting the following requirements:

1. Paying all disciplinary fines;
2. Maintaining clear disciplinary conduct;
3. Participating in the Inmate Financial Responsibility Program, and/or Encumbrance (50/50) Program;
4. Maintaining a job with satisfactory work performance, if applicable;
5. Active participation in and satisfactory completion of all programs recommended by the Unit Team;
6. Completion of all ABE/GED, or satisfactory progress towards obtaining a GED as determined by Education staff, or be exempt from the Literacy Program;
7. Obtaining at least one form of identification
8. Positive overall institution adjustment to include, but not limited to, personal hygiene, cell sanitation with established standards; and
9. Positive behavior and respectful conduct towards staff and other inmates.
10. Attendance at all Program Reviews
11. Enrollment and active participation in the Doing Time with the Right Mind program administered through the Unit Team, and Nonresidential Drug and Alcohol Program

Inmates will be reviewed by their Unit Team every 3 months to determine their appropriateness for additional telephone calls. Inmates who fail to meet the eligibility criteria at this review will return to Level 1. An inmate's failure to maintain clear conduct between 3 months reviews will result in the inmate returning to Level 1. In order to be considered for the Privilege Incentive Program, please submit a request to your respective Unit Manager.


_____11/12/14_____

**Date**

**J. Oliver, Complex Warden**