IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00884-WJM-MJW

ALTON DAVIS,

Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,

Defendant.

**REPORT & RECOMMENDATION ON
DEFENDANT'S MOTION TO DISMISS (Docket No. 25)**

**MICHAEL J. WATANABE
United States Magistrate Judge**

Plaintiff is an inmate at Florence ADX, suing under 42 U.S.C. § 1983.  He alleges that (1) the communications restrictions ("CRs") imposed on him as he transferred out of Special Administrative Measures ("SAMs") were unconstitutional in a number of ways, and (2) the prison is deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

Defendant moves to dismiss on a variety of theories, and District Judge William J. Martinez referred the motion to the undersigned.  The Court has reviewed the parties' filings (Docket Nos. 25, 32, 36, & 40); taken judicial notice of the Court's entire file in this case; and considered the applicable Federal Rules of Civil Procedure, statutes, and case law.  Now being fully informed, the Court recommends that Defendant's motion be granted.

## **Allegations**

Plaintiff alleges that his 2010 conviction was based on false and fabricated evidence. (Docket No. 1, p.3.) Upon incarceration, the government imposed SAMs restricting Plaintiff's correspondence and other privileges—because, as Plaintiff alleges, the government again relied on false and fabricated evidence, this time claiming that Plaintiff solicited (from prison) the murder of two federal law enforcement officers involved in his 2010 conviction. (*Id.* at 4.) The SAMs were renewed for four years, even after Plaintiff's transfer to ADX; Plaintiff alleges that the SAMs were lifted only after he filed a civil lawsuit challenging them.[1] (*Id.*) Nonetheless, the prison imposed a different set of restrictions—the CRs—immediately upon lifting the SAMs. (*Id.* at 4–5 & Exs. A-1, A-2.) Plaintiff alleges that both his transfer to ADX and the CRs are based on the same false and fabricated evidence as the initial SAMs. (*Id.* at 5–6.)

Plaintiff claims in Count One that the CRs violate his First Amendment rights, because the prison rejected letters Plaintiff attempted to send to his children's mothers (five letters dated September 2 and 4, 2014); to his step daughters (letters dated September 3 and 8, 2014); and to two friends (letters dated September 2 and 8, 2014). (*Id.* at 8.) The prison also rejected incoming mail from an expert witness on Plaintiff's legal defense team. (*Id.*) Plaintiff alleges that rejecting these letters serves no rational penological purpose. (*Id.*) Plaintiff further alleges the CRs—especially when combined with the isolating conditions of ADX—violate both his right to associate and his right to

---

[1] The Court takes judicial notice that Plaintiff's earlier suit was dismissed under Federal Rules of Civil Procedure 12(b)(2) and (b)(6). *Davis v. Holder*, No. 12-CV-02122-REB-KMT, 2014 WL 1713429 (D. Colo. Apr. 23, 2014).

communicate. (*Id.* at 9–10.) Finally, Plaintiff claims that the CRs further violate his religious rights under the First Amendment and/or the Religious Freedom Restoration Act. (*Id.*) There are no allegations explaining the religious burden, other than allegations again noting the limits on Plaintiff's ability to communicate with friends and family. (*See id.* at 10–11.)

Plaintiff claims in Count Two that the CRs violate his "Fourth, Fifth and Fourteenth Amendment" rights under a procedural due process theory. (*Id.* at 13.) To support this claim, Plaintiff points both to the CRs and to the overall conditions of confinement at ADX. (*Id.* at 14.) Plaintiff alleges that he was afforded no pre-deprivation process at all (*id.* at 15); that it was insufficient for the warden to rely solely on the representations of an AUSA and an ATF agent (the individuals whose murders the Plaintiff is charged with soliciting while in prison) (*id.* at 16); and that the post-deprivation grievance procedures are meaningless and insufficient (*id.* at 17–18).

In Count Three, Plaintiff claims that the CRs, when combined with the overall conditions at ADX, constitute cruel and unusual punishment in violation of the Eighth Amendment. (*Id.* at 19–26.) Further, he alleges that the prison has been deliberately indifferent to his medical needs. He had surgery to remove tumors in his bladder in 2011, and he alleges that the prison does not check for recurrent cancer every six months, as recommended (*id.* at 26); further, Plaintiff is diabetic, which "comes with its own complications," to which the prison is indifferent (*id.* at 27). Plaintiff provides no further specificity as to his medical treatment or lack thereof. (*See id.*)

For relief, Plaintiff seeks: (1) an injunction compelling the prison to produce (and identify the source of) the evidence it relied upon in determining that Plaintiff is a security risk warranting CRs; (2) a declaratory judgment that his rights have been violated as alleged; and (3) an injunction compelling Defendant to end the CRs, transfer Plaintiff to a different case worker within the prison, and/or transfer Plaintiff to a lower-security prison. (*Id.* at 29–31.)

## Legal Standards

Defendant moves under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). As to Rule 12(b)(1), Judge Martinez has said:

> Rule 12(b)(1) empowers a court to dismiss a complaint for lack of jurisdiction over the subject matter. Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. A court lacking jurisdiction must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking.
>
> A Rule 12(b)(1) motion to dismiss is typically determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction. When considering a Rule 12(b)(1) motion, however, the court may consider matters outside the pleadings without transforming the motion into one for summary judgment. Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's factual allegations and has wide discretion to allow affidavits, other documents, and may even hold a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).

*Colon v. Berkebile*, No. 11-cv-01169-WJM-KMT, 2014 WL 485720, at *3 (D. Colo. Feb. 6, 2014) (internal citations, quotation marks, and alterations omitted).

As to Rule 12(b)(6), Judge Martinez has said:

> The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true. To survive a Rule 12(b)(6) motion, the complaint must plead sufficient facts, taken as true, to provide plausible grounds that discovery will reveal evidence to support the plaintiff's allegations. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief. This requirement of plausibility serves not only to weed out claims that do not have a reasonable prospect of success, but also to provide fair notice to defendants of the actual grounds of the claim against them.
>
> The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.

*Maxfield v. Bressler*, 20 F. Supp. 3d 1084, 1088 (D. Colo. 2013) (internal citations, quotation marks, and alterations omitted).

## **Discussion**

Defendant argues that the Court lacks jurisdiction because the CRs have been lifted and the case is thus moot. Defendant further argues that Plaintiff has not stated a claim for relief because (1) he has not plausibly alleged anything suggesting that the CRs are not rationally related to a legitimate penological objective, and further he has not plausibly alleged any burden on specific religious rights; (2) he has plausibly alleged neither a protected liberty interest nor inadequate process for a deprivation; and (3) he has plausibly alleged neither inadequate conditions of confinement nor any actions that would constitute deliberate indifference to his medical needs. The Court will discuss these arguments in turn.

**I.      Mootness and Subject Matter Jurisdiction**

Defendant argues that all claims predicated on the CRs are moot because the CRs have been lifted. As Judge Martinez has said:

> This Court has no jurisdiction to consider moot cases, that is, cases in which the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. It is a basic principle of Article III that a justiciable case or controversy must remain extant at all stages of review, not merely at the time the complaint is filed. Where a plaintiff seeks an injunction, his susceptibility to continuing injury is of particular importance—past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects.

*Colon*, 2014 WL 485720, at *3. Here, Defendant provided a declaration establishing that the CRs have been lifted (Docket No. 25-1)—and while Plaintiff quibbles with some of the details in that declaration, he does not dispute that the CRs have been lifted. That said, the mootness doctrine will not apply where the injurious conduct is "in effect for a 'duration too short to be fully litigated prior'" and "there is a "reasonable expectation'" of repetition. *Al-Owhali v. Holder*, 687 F.3d 1236, 1242 (10th Cir. 2012) (quoting *Jordan v. Sosa*, 654 F.3d 1012, 1035 (10th Cir. 2011)).

In *Al-Owhali*, the Tenth Circuit concluded that the case was not moot because, on the record before the court, "there is nothing preventing the government from introducing more restrictive SAMs in any given year. As this case shows, a prisoner can reasonably expect SAMs to change from year to year and fluctuate in severity." *Id. Al-Owhali* did not create a blanket rule that SAMs and related restrictions are always exceptions to the mootness doctrine. But nonetheless, Plaintiff's allegations are that Defendant lifted the SAMs only to re-impose similar (if lighter) restrictions through the

7

CRs—and, further, that the CRs were used to restrict correspondence with Plaintiff's family, even though such correspondence should have been allowed under the terms of the CRs. The allegations are sufficient to raise a reasonable expectation of repetition.

Further, nothing in Defendant's declaration establishes that Plaintiff did *not* have a reasonable expectation that he might be subjected to CRs again. The declaration testifies that six-month CRs are the normal "transition" from SAMs to unrestricted status. (Docket No. 25-1 ¶6.) But the warden did not cite the SAMs regulations nor explain this transition to Plaintiff when the CRs were imposed; instead, the warden cited Plaintiff's security risk and an entirely different federal regulation. (Docket No. 25-1, pp. 13–14.) This does little to suggest that Plaintiff should not expect CRs to re-imposed without warning. Finally, even if Plaintiff had alleged nothing establishing such a reasonable expectation, he challenges not only the CRs but his assignment to ADX—a matter that is not moot so long as he remains in a heightened-security prison. *Rezaq v. Nalley*, 677 F.3d 1001, 1008–10 (10th Cir. 2012).

Accordingly, the Court recommends that the motion be denied insofar as it relied on Rule 12(b)(1).

**II.    First Amendment Claims**

In *Al-Owhali*, having found the case not moot, the Tenth Circuit went on to explain the pleading standards for challenging prison restrictions:

> In addition to the pleading burden imposed by *Iqbal*, inmates face additional hurdles when challenging a prison regulation as unreasonable. As a general matter, when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. We use four factors to guide our *Turner* inquiry:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.
>
> Among these factors, the first is the most important; as we have noted, it is not simply a consideration to be weighed but rather an essential requirement.
>
> Analysis of the four *Turner* factors is necessary at the summary judgment stage. But in ruling on a motion to dismiss, a court need only assess, as a general matter, whether a prison regulation is reasonably related to a legitimate penological interest. Thus, while it is critical that a complaint address *Turner*'s core holding, the four *Turner* factors need not be part of the analysis at the pleading stage.
>
> Taken together, *Iqbal* and *Turner* require an inmate to plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest. This is not to say that Plaintiff must identify every potential legitimate interest and plead against it. However, he is required to recite facts that might well be unnecessary in other contexts to surmount a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

*Al-Owhali*, 687 F.3d at 1240 (internal citations, quotation marks, and alterations omitted).

Accordingly, the burden on Plaintiff is to allege facts suggesting that the CRs did not serve their purported penological interest: to avert "further criminal activity" and to protect the "security and good order of the institution." (Docket No. 1, p. 33.) The only factual allegations arguably speaking to this point are (1) that the accusation of soliciting the murder of two federal law enforcement officers while in prison was based on false and fabricated evidence; and (2) that Plaintiff's correspondence with his step-daughters,

children's mothers, and friends are unrelated to these interests. This is little more than conclusory; Plaintiff provides no factual context from which the Court could infer that the evidence might indeed be fabricated (or that the prison knows it is fabricated), or that his friends might indeed be unrelated to any possible criminal activity (or, again, that the prison should know this to be undeniable). This is simply too thin to meet the plausibility standard. The Court recommends that Plaintiff's freedom-of-communication and freedom-of-association claims be dismissed under Fed. R. Civ. P. 12(b)(6).

### III.     Fifth and Fourteenth Amendment Claims

"To state a claim for a Due Process violation, a prisoner must show: (1) he was deprived of a protected interest in life, liberty, or property; and (2) that he was not afforded the appropriate level of process." *Reinhardt v. Kopcow*, 66 F. Supp. 3d 1348, 1355 (D. Colo. 2014) (Martinez, J.) (citing *Elliott v. Martinez*, 675 F.3d 1241, 1244 (10th Cir. 2012)). "A deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty interest status and require procedural due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). In applying this standard, "[r]elevant factors might include whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement []; and (4) the placement is indeterminate . . . ." *Estate of DiMarco v. Wyo. Dep't of Corrs.*, 473 F.3d 1334, 1342 (10th Cir. 2007).

10

Applying these factors, this Court has repeatedly held that SAMs do not implicate a protectable liberty interest. *See Ghailani v. Holder*, No. 14-CV-00041-CMA-BNB, 2015 WL 430375, at *8 (D. Colo. Jan. 30, 2015) (collecting cases). The Court does so even when the inmate is incarcerated at ADX. *See, e.g.*, *id.* It follows that CRs—a lesser restriction than SAMs—are unlikely to implicate a protectable liberty interest. And here, where Plaintiff has not provided any factual allegations suggesting that the restrictions are not rationally related to a legitimate penological interest, he has not met his burden. The Court recommends that Plaintiff's Due Process claim be dismissed under Fed. R. Civ. P. 12(b)(6).

**IV.     Eighth Amendment Claims**

Plaintiff asserts two claims under the Eighth Amendment: a challenge to the conditions of confinement created by the CRs, and an unrelated challenge to his medical care.

*Conditions-of-Confinement Claim*

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to the scrutiny of the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). Certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "An inmate making a direct challenge to conditions of confinement under the 8th Amendment, must show that, judged by contemporary standards of decency, the conditions either involve the wanton and unnecessary infliction of pain, that they are grossly disproportionate to

the severity of the crime, or that they entail serious deprivation of basic human needs." *Georgacarakos v. Wiley*, 2010 WL 1291833, at *11 (D. Colo. Mar. 30, 2010) (internal quotation marks and citation omitted). "Prison officials must . . . take reasonable measures to guarantee those inmates' safety." Id. (citation omitted). "An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind." *Matthews v. Wiley*, 744 F.Supp.2d 1159, 1176 (D. Colo. 2010). "The subjective component follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id.* (quotations omitted).

Here, again, this Court has routinely rejected conditions-of-confinement claims based on SAMs, mail restrictions, or other communication restrictions imposed on ADX inmates. *See Gowadia v. Stearns*, 596 F. App'x 667, 674 (10th Cir. 2014) (SAMs); *Hale v. Fed. Bureau of Prisons*, No. 14-CV-00245-MSK-MJW, 2015 WL 5719649, at *15 (D. Colo. Sept. 30, 2015) (mail holds); *Ghailani v. Holder*, No. 14-CV-00041-CMA-BNB, 2015 WL 430375, at *9 (D. Colo. Jan. 30, 2015) (collecting further cases). Nothing alleged here sets this case apart; the CRs allowed social visitors and certain amounts of close family mail (*see* Docket No. 1, p.34), and therefore did not totally deprive Plaintiff of human interaction. The Court recommends that Plaintiff's conditions-of-confinement claim be dismissed under Fed. R. Civ. P. 12(b)(6).

### Deliberate-Indifference Claim

As Judge Martinez has said:

12

> The Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment . . . .
>
> A claim of deliberate indifference to serious medical needs is rooted in the government's obligation to provide medical care for those whom it is punishing by incarceration, where a detainee cannot access medical care through any other means.  In such cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose.  Nevertheless, not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.
>
> . . . To evaluate a claim for deliberate indifference to serious medical needs, a court must engage in a two-pronged inquiry, comprised of an objective component and a subjective component.  The objective prong examines whether a medical need is sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause.  The subjective prong examines the state of mind of the defendant, asking whether the official knows of and disregards an excessive risk to inmate health or safety.
>
> . . . In the Tenth Circuit, a serious medical need that satisfies the objective prong is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.
>
> . . . The subjective prong of the deliberate indifference test requires an inquiry into whether each defendant had a sufficiently culpable state of mind.  To satisfy the subjective prong, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  Once it is shown that the official knew the plaintiff faced a substantial risk of harm, a claim for deliberate indifference requires a showing that the official disregarded that risk by failing to take reasonable measures to abate it.  Thus, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.

*Kirkland v. O'Brien*, No. 12-CV-2083-WJM-KLM, 2014 WL 1224564, at *2-4 (D. Colo. Mar. 25, 2014) (internal citations, quotation marks, and alterations omitted).

13

Plaintiff's Complaint provides no specific factual allegations from which *any* of these standards could be deemed met. He alleges that he is diabetic, but alleges nothing about the severity of the condition. He alleges that he has previously had bladder cancer—for which the prison provided surgery—but alleges nothing about the current state of his condition. Finally, outside of alleging that he does not receive semiannual check-ups on his bladder as he believes he should, he alleges nothing at all speaking to Defendants' knowledge or treatment of his conditions. The Court recommends that Plaintiff's deliberate-indifference claim be dismissed under Fed. R. Civ. P. 12(b)(6).

## Recommendation

It is RECOMMENDED that Defendant's Motion to Dismiss (Docket No. 25) be GRANTED and this case DISMISSED under Federal Rule of Civil Procedure 12(b)(6).

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colo. Dep't of Corr., 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated:      February 4, 2016         */s/ Michael J. Watanabe*
              Denver, Colorado        Michael J. Watanabe
                                             United States Magistrate Judge