# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge William J. Martínez

Civil Action No. 15-cv-0884-WJM-NRN

ALTON DAVIS,

    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS

    Defendant.

## ORDER DENYING PLAINTIFF'S NOVEMBER 19, 2018 MOTION FOR RECONSIDERATION

This matter is before the Court on Plaintiff's November 19, 2018 Motion for Reconsideration ("Motion" or "Motion for Reconsideration"; ECF No. 297.) Plaintiff asks the Court to reconsider its order (ECF No. 289) denying Plaintiff's previous motion for reconsideration (ECF No. 288). For the reasons set forth below, Plaintiff's Motion is denied.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff, an inmate in Defendant's custody, is currently incarcerated at the United States Penitentiary, Administrative Maximum Facility ("ADX"). (ECF No. 90 at 3.) Plaintiff filed this action against Defendant on April 27, 2015.[1] (ECF No. 1.)

On June 15, 2015, Defendant moved to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 25.) On March 24,

---

[1] Plaintiff also brought claims against other individuals and entities, but these claims were subsequently dismissed. (*See* ECF Nos. 1, 5, 50, 63, 90, 144.) For the purpose of this order, these prior defendants need not be discussed.

2016, the Court dismissed Plaintiff's claims pursuant to Rule 12(b)(6), but gave him the opportunity to seek leave to amend his complaint. (ECF No. 50 at 17.) Plaintiff subsequently amended his complaint on two different occasions. (ECF Nos. 63 & 90.)

On August 29, 2016, Defendant filed a motion to dismiss the operative complaint ("Second Motion to Dismiss") pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6). (ECF No. 98.) The Court granted the motion in part (the "Order") and dismissed all of Plaintiff's claims except for one, a Religious Freedom Restoration Act ("RFRA") claim against Defendant. (ECF No. 144 at 27.)

On March 30, 2018, Defendant filed a third motion to dismiss pursuant to Rule 41(b), seeking dismissal of Plaintiff's sole remaining claim. While this motion was pending, Plaintiff filed a motion for reconsideration, asking the Court to reconsider its Order that had granted in part Defendant's Second Motion to Dismiss. (ECF No. 288.) The Court denied that motion as it failed to state any ground that warranted reconsideration. (ECF No. 289.)

On November 16, 2018, the Court granted Defendant's third motion to dismiss, dismissed Plaintiff's only remaining claim, and terminated this action. (ECF No. 295.) Final judgment in favor of Defendant was entered that same day. (ECF No. 296.) On November 19, 2018, the Clerk of Court docketed Plaintiff's instant Motion, requesting the Court to reconsider its order denying Plaintiff's previous motion for reconsideration. (ECF No. 297.) Plaintiff apparently mailed this motion from prison on November 14, 2018 (*see id.* at 13), before the Court had dismissed the case.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *Hatfield v. Bd. of Cnty. Comm'rs for Converse Cnty.*, 52 F.3d 858, 861 (10th Cir. 1995). Where, after judgment has entered in a case, a party files a motion for reconsideration, courts generally construe such a motion as invoking Federal Rules of Civil Procedure 59(e) and 60(b). *Id*.

On the other hand, where a party files a motion for reconsideration, prior to the entry of judgment, Rules 59(e) and 60(b) do not apply. *Houston Fearless Corp. v. Teter*, 313 F.2d 91, 92 (10th Cir. 1962). Instead, the motion falls within a court's plenary power to revisit and amend interlocutory orders as justice requires. *See Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir. 1980) (citing Fed. R. Civ. P. 54(b)); *see also Houston Fearless Corp.*, 313 F.2d at 92. The Court finds Plaintiff's November 19, 2018 Motion for Reconsideration to fall within this category, because even though it was filed after judgment was entered on November 16, Plaintiff deposited the Motion in the prison's internal mail system on November 14. (ECF No. 297 at 14.) *See Price v. Philpot*, 420 F.3d 1158, 1163–64 (10th Cir. 2005) (discussing prison mailbox rule).

A motion for reconsideration is appropriate where there is "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005,1012 (10th Cir. 2000). "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.*

The Federal Rules of Civil Procedure, however, do not offer an opportunity for a party to reargue its case after the court has rendered a decision. *Id.* (holding that a party moving to reconsider a prior ruling should not "revisit issues already addressed or advance arguments that could have been raised in prior briefing"); *see also All W. Pet Supply Co. v. Hill's Pet Prods. Div.*, 847 F. Supp. 858, 860 (D. Kan. 1994) ("A motion to reconsider or to alter or amend may not be used as a vehicle for the losing party to rehash arguments previously considered and rejected by the district court."). The Court, however, is mindful of Plaintiff's *pro se* status, and accordingly, construes his Motion for Reconsideration liberally. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### III.  ANALYSIS

As referenced previously, in the instant Motion Plaintiff asks the Court to reconsider its order that denied Plaintiff's earlier motion for reconsideration. To provide context, the Court will review the background and procedural history in regard to the relevant motions and orders.

In 2010, Plaintiff was convicted on eight criminal counts. (ECF No. 25 at 1.) Originally incarcerated in New York's Metropolitan Correctional Center, Plaintiff was transferred in September 2010 to ADX where Special Administrative Measures ("SAMs") were implemented regarding his confinement. (ECF No. 1 at 3–4.) According to Defendant, the SAMs were implemented because Plaintiff "demonstrates a proclivity for violence, as evidenced by his conviction on eight criminal counts, including two murders during two home invasion robberies, as well as his attempt, while incarcerated, to order the murders of two federal law enforcement officials." (ECF No. 25 at 2.)

4

Plaintiff's SAMs expired on August 31, 2014. (ECF No. 98-2 ¶ 8.)

"When an inmate is removed from SAMs at the ADX, ordinarily, the inmate is placed on . . . correspondence restriction ['CR'] status for a period of six (6) months." (*Id.* ¶ 4.) The reason for this "is to transition the inmate from SAMs to general population setting, as the [CRs] are less restrictive than the SAMs, but still permit correctional staff to observe whether the inmate's communications present a substantial risk of harm." (*Id.*) Accordingly, CRs were imposed on Plaintiff once the SAMs expired. (*Id.* ¶ 9.) After six months elapsed, Plaintiff's CRs were removed. (*Id.* ¶¶ 13–14.)

Approximately two months after his CRs had been withdrawn, Plaintiff brought this action against Defendant, alleging that the imposition of the CRs violated his constitutional rights.[2] (ECF No. 1.) Defendant moved to dismiss the claims as moot under Rule 12(b)(1) since Plaintiff was no longer subject to any CRs. (ECF No. 25 at 4.) The Court, however, found that an exception to the mootness doctrine applied because Plaintiff's CRs were in effect for a duration too short to be litigated fully and because there was a reasonable expectation that Plaintiff could be subjected to CRs in the future.[3] (ECF No. 50 at 7.) Thus, the Court found that the complaint should not be dismissed pursuant to Rule 12(b)(1). (*Id.*)

Defendant subsequently filed its Second Motion to Dismiss. (ECF No. 98.) In the motion, Defendant supported its mootness argument by submitting a sworn

---

[2] Plaintiff brought an additional claim (not related to the imposition of the CRs) where he alleged that Defendant was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. (ECF No. 1.) This claim is not material to the analysis in this Order.

[3] The Court noted that "no additional conduct by the Plaintiff would be required to reimplement the restrictions because the prior CRs were based on Plaintiff's status as a security risk rather than any specific act or violation." (ECF No. 50 at 7.)

5

declaration of Associate Warden Michael Carr. (ECF No. 98-2.) In the declaration, Mr. Carr stated that Plaintiff's CRs were lifted in March 2015 and that "there is no plan" to place him back on CRs. (*Id.* ¶ 16.) In addition, Mr. Carr stated that Plaintiff was subjected to CRs "for six (6) months as a way to transition him from SAMs to the general population." (*Id.*) Moreover, Mr. Carr explained that any future CR "would need to [be justified] by showing that [Plaintiff] currently meets the requirements of 28 C.F.R. § 540.15." (*Id.* ¶ 17.)

In light of Mr. Carr's declaration, the Court found that Defendant had "carried [its] burden of showing that the challenged conduct (imposition of the CRs) cannot be reasonably expected to resume." (ECF No.144 at 9.) Thus, the Court found that the exception to the mootness doctrine no longer applied, and that Plaintiff's claims premised on the imposition of the CRs were moot, given that the CRs were no longer in effect. (*Id.* at 8–10.) Accordingly, the Court dismissed all of Plaintiff's claims based on the imposition of CRs. (ECF No. 144 at 27.)

On October 22, 2018, Plaintiff filed a motion for reconsideration, asking the Court to reconsider its Order dismissing his CR related claims. (ECF No. 288.) The Court denied this motion, as it failed to state any ground that warranted a motion for reconsideration, containing instead arguments Plaintiff had previously raised. (ECF No. 289.) On November 19, 2018, Plaintiff filed the instant Motion, requesting that the Court reconsider its order that denied his previous motion for reconsideration.

In the Motion, Plaintiff admits that he is rehashing arguments he has previously made, but asserts that the Court was incorrect in finding that his previous motion for reconsideration did not "meet the standard of *Servants of the Paraclete v. Does*." (ECF

6

No. 297 at 2–5.) In particular, Plaintiff argues that the Court "misapprehended the fact[s]" and that he had "raised new argument and present[ed] newly discovered evidence . . . to corroborate said argument in his motion for reconsideration Doc. 288." (ECF No. 297 at 3, 5.) After a liberal reading of Plaintiff's Motion, as is warranted by his *pro se* status, the Court construes the Motion to argue that it should be granted because: (1) Plaintiff has presented new evidence previously unavailable; and (2) the Court needs to correct clear error caused by its misapprehension of the facts.

Plaintiff's arguments revolve around Mr. Carr's declaration, particularly the following paragraph:

> If [Plaintiff] were to be placed on [CRs] in the future, [Defendant] would need to justify that placement by showing that [Plaintiff] currently meets the requirements of 28 C.F.R. § 540.15. Such placement would not be justified by his past SAMs.

(ECF No. 98-2 ¶ 17.) In his Motion, Plaintiff argues that his CR related claims were dismissed because Defendant swore to the Court (via Mr. Carr's declaration) that it could not impose CRs against Plaintiff without first justifying its imposition, and that such justification would not come from Plaintiff's prior SAMs. (ECF No. 297 at 2–3.) In addition, Plaintiff asserts that he was only designated a security risk because of his SAMs. (*Id.* at 3; *see* ECF No. 98 at 6.) Thus, Plaintiff claims that once his SAMs and CRs were removed, he could no longer be designated as a security risk. (ECF No. 297 at 3.)

However, Plaintiff asserts that Defendant is currently restricting him from joining the "step-down" program and justifies this restriction by designating Plaintiff as a

security risk.[4]  (*Id.* at 2–3.)  Therefore, Plaintiff asserts that Defendant and the "ADX screening committee" are still using Plaintiff's previous SAMs to justify denying Plaintiff entry into the "step-down" program, even though Defendant had vowed to the Court that it would no longer use the SAMs to justify its implementation of CRs on Plaintiff.  (*Id.* at 2–4.)  Plaintiff asserts that Defendant's "continued use of this justification now warrants reconsideration of the district court dismissal of Plaintiff's case as moot."  (*Id.* at 4.)  In addition, Plaintiff's "newly discovered evidence" is comprised of several documents where Plaintiff was denied entry into the step-down program due to safety concerns and Plaintiff's objections to those rulings.  (*Id.* at 6–11.)

The Court finds that Plaintiff's Motion fails to meet any of the *Servants of the Paraclete* factors set forth above.  The Court dismissed Plaintiff's CR based claims because the CRs were no longer in effect and could not reasonably be expected to resume.  (ECF No. 144 at 8–9.)  Plaintiff is now claiming that this ruling should be reconsidered since Defendant is not allowing him to join the step-down program. Plaintiff appears to argue that imposition of CRs based on his prior SAMs is an instance of him being denied entry into the step-down program based on safety and security concerns.  The Court rejects this contention, and finds these two actions to be wholly dissimilar.

Plaintiff's own Motion establishes that he was placed in the step-down program in September 2016 but was removed in November 2016 when prison officials found

---

[4] The ADX's step-down program is for inmates who have exhibited good conduct over an extended period of time and it "enables inmates to earn their way to a less restrictive setting and ultimately to another, less restrictive facility."  National Criminal Justice Reference Service, https://www.ncjrs.gov/App/Publications/abstract.aspx?ID=269629 (last visited Dec. 28, 2018).

8

contraband in his cell.[5] (ECF Nos. 297 at 4 & 288 at 7–8.) In removing Plaintiff from the program, the screening committee cited safety and security concerns. (ECF No. 297 at 6.) It is evident that this security risk justification is not due to Plaintiff's prior SAMs, but due to subsequent safety concerns raised from Plaintiff's possession of contraband that could be used as dangerous weapons. Moreover, just because Defendant said it would not use Plaintiff's prior SAMs to impose new CRs, does not mean that Defendant cannot consider the context surrounding the imposition of the SAMs (in particular, Plaintiff's attempt to order the murders of two federal law enforcement officials from prison) in deciding whether or not to place Plaintiff in the less restrictive step-down program.

Upon review of the Motion for Reconsideration and a re-examination of the Court's prior rulings, the Court concludes that Plaintiff has failed to demonstrate that any of the grounds justifying reconsideration exist in his case. Plaintiff has failed to demonstrate an intervening change in the controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice. *See Servants of the Paraclete*, 204 F.3d at 1012. Instead, Plaintiff merely raises the same arguments that were previously considered and rejected by the Court. In addition, Plaintiff's purported "new evidence" contains the exact same documents that Plaintiff has already presented and argued before the Court. (*Compare* ECF No. 297 at 6–11 *with* ECF No. 288 at 46–50, 52.)

---

[5] Prison officials found a "manufactured heating element" stinger and a "plastic razor blade handle." (ECF No. 288 at 41.)

## IV.  CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Reconsideration (ECF No. 297) is DENIED.

Dated this 28th day of December, 2018.

BY THE COURT:

William J. Martínez
United States District Judge